UNITED STATES *v.* NATIONAL FOLDING BOX CO. (No. 4032)[1]

United States Court of Customs and Patent Appeals, December 21, 1936

Joseph R. Jackson, Assistant Attorney General (Richard E. FitzGibbon, special attorney, of counsel), for the United States.

Barnes, Richardson & Halstead (Samuel M. Richardson and Joseph Schwartz of counsel) for appellee.

[Oral argument December 7, 1936, by Mr. FitzGibbon and Mr. Schwartz]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court holding certain apparatus dutiable as parts of machines, finished or unfinished, at 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930, as claimed by appellee, rather than as manufactures of metal, not specially provided for, at 45 per centum ad valorem under paragraph 397 of that act, as held by the collector at the port of New York.

The pertinent statutory provisions read:

PAR. 372. * * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: Provided, That parts, not specially provided for, wholly or in chief value of metal or porcelain, of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts: * * *

PAR. 397. Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

The only testimony in the case, that of Mr. Lewis E. Weiser, was submitted by the importer.

Mr. Weiser testified that the merchandise in question is a large "funnel-shaped affair; in fact, a double funnel", and that water, together with what we assume to be paper pulp, although the witness was not very articulate upon that subject, is pumped into the top of the "funnel-shaped" device, and "goes over a sort of an umbrella."

We quote from the testimony of the witness with regard to the method of operation:

—A. From the inside of the funnel the fibres gradually go to the bottom; from the bottom of this the paper pulp goes over a sort of partition and is pumped back for re-use. The water then—what is left of it—comes back through the outside, filling inner funnel.

Q. That is on each side of the inside funnel?—A. That is right; and just slowly trickles over a sort of partition all the way down. That flows out of there and flows out by gravity, and they re-use it in the manufacture of paper.

Judge DALLINGER. You speak of a pump being on the inside of the funnel. Is that an American made pump?

The WITNESS. Yes, sir.

The witness further stated that there were no moving parts in the apparatus itself, except the cone. Just what moving parts, if any, there were of the cone, he did not state, and the record does not disclose. He said that the apparatus was operated by the water being "pumped in from our paper-making machines into this umbrella shaped funnel at the top."

We quote further from his testimony:

Q. And another pump removes the paper material, doesn't it?—A. Yes, sir.

Q. In the bottom?—A. Yes, sir; and the clarified water, it goes back to the paper machine.

\* \* \* \* \* \* \*

Cross-examination by Mr. FITZGIBBON:

X Q. This funnel has nothing to do with the paper-making machinery itself, has it?—A. Not in the sense of paper-making.

X Q. It simply reclaims water from the solution of pulp and water, and also separates the clear water from the solution of pulp and water?—A. Yes, sir; that is right.

On this record the court below stated that—

While it may be true, and the record so establishes, that the funnel-shaped filter, as imported, has no moving mechanical parts, and therefore of itself may not be considered a mechanical contrivance such as would be deemed a complete machine, it is equally a fact that it is an integral part of an appliance or apparatus which comprises a pump which is a mechanical contrivance, and that when the two are connected they constitute a complete machine \* \* \*.

and, upon the authority of the case of *United States* v. *Sheldon & Co.*, 15 Ct. Cust. Appls. 308, T. D. 42484, held that the involved device was an integral part of a machine, because it was used in conjunction with two pumps which in themselves were machines.

If the facts of record were in accordance with the views expressed in the decision of the trial court, we would have no difficulty in concurring in the court's conclusion.

It is perfectly obvious from an examination of the record that the device, standing alone, is not a machine. In fact, counsel for appellee do not claim that it is. Counsel contend, however, that it is a part of a machine, and that the other parts consist of "pumps" which work in conjunction therewith.

The burden was upon the importer to establish that the device in question and the pumps used in conjunction therewith were integral or constituent parts of each other, and that the whole constituted a machine. That it failed to do.

In other words, there is nothing of record to show any different relationship existing between the "pumps" and the involved device, than there is between an ordinary water pump and an ordinary water tank, and we venture the suggestion that no one would contend that such a water pump and such a water tank were integral or constituent parts of each other.

Although we have considered each of the decisions referred to by the trial court and by counsel for the parties with care, we are forced to the conclusion that there is absolutely no evidence warranting the holding that the device in question is an integral or constituent part of a machine.

For the reasons stated, the judgment of the trial court is *reversed*.